***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at and subsequent to the hearing before the Deputy Commissioner, and in a Pre-Trial Agreement that was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. The date of the alleged injury that is the subject of this claim is October 2, 2002.
2. On the relevant dates herein, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On the relevant dates herein, an employer-employee relationship existed between plaintiff and defendant-employer.
4. On the relevant dates herein, defendant-employer employed three or more employees.
5. On the relevant dates herein, defendant-employer was insured by ESIS.
6. Plaintiff's average weekly wage will be determined from a properly
completed Industrial Commission Form 22 Wage Chart to be produced by defendant-employer.
7. At and subsequent to the hearing before the Deputy Commissioner, the parties submitted a Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2).
 *********** EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, plaintiff submitted the following:
a. A Personal Injury/Illness Report dated October 8, 2002, which was admitted and marked as Plaintiff's Exhibit (1);
b. A Medical Staff Worksheet dated October 8, 2002, which was admitted and marked as Plaintiff's Exhibit (2); and,
c. The Transcript of Plaintiff's Recorded Statement, which was admitted and marked as Plaintiff's Exhibit (3).
Also at the hearing before the Deputy Commissioner, defendants submitted the following:
a. Plaintiff's Answers to Defendants' First Set of Interrogatories, which was admitted and marked as Defendants' Exhibit (1);
b. Plaintiff's Employment Application, which was admitted and marked as Defendants' Exhibit (2);
c. An Order and Certificate of Name Change, which was admitted and marked as Defendants' Exhibit (3);
d. An 8 April 2003 Correspondence Regarding Supplemental Answers to Defendants' Interrogatories, which was admitted and marked as Defendants' Exhibit (4);
e. A 10 April 2003 Correspondence Regarding Supplemental Answers to Defendants' Interrogatories, which was admitted and marked as Defendants' Exhibit (5), and;
f. A Record of Plaintiff's Criminal Convictions, which was admitted over plaintiff's objection and marked as Defendants' Exhibit (6).
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 44 years of age, with his date of birth being April 13, 1958. Plaintiff has obtained his GED.
2. Prior to working for defendant-employer, plaintiff had worked in a variety of jobs. From 1994 to 1996, plaintiff worked as a laborer and a mortar mixer for Beers Construction. Plaintiff also worked with Bobby Frazier as a pavement marker, and for Blythe Construction where he gathered tools and cleaned up construction sites. Additionally, plaintiff has worked as a restaurant cook, as a grocery bagger, and as a cleaner for a fast food chain.
3. In April 2002, plaintiff was hired by defendant-employer for general labor and to press asphalt. Defendant-employer's business involves the resurfacing of roads and highways. In his position with defendant-employer, plaintiff's duties included lifting objects that weighed in excess of one hundred pounds (100 lbs).
4. On October 2, 2002, defendant-employer was resurfacing a portion of highway in Guilford County. Plaintiff testified that on such morning, between 9:00 a.m. to 10:00 a.m., he was lifting heavy steel plates on the instruction of his supervisor, Joe Brown. According to plaintiff's testimony, as he was lifting these plates, he experienced pain in his middle and low back that radiated down the back of his left leg. Plaintiff further testified that the pain worsened as the day progressed.
5. As to providing notice of the incident to defendants, plaintiff testified that because Brown was not present when the injury occurred, he had to wait to report it until later in the day. In plaintiff's response to defendants' discovery, he asserted that when he did inform Brown of his injury, he was instructed to "shake it off." Plaintiff further testified that he reported his back injury to co-workers on the day it occurred, and that one of his co-workers, Jason Wilson, was present and nearby when the incident occurred and had observed plaintiff moving the steel plates. Contrary to plaintiff's testimony, Brown, Wilson, and another co-worker, William Whithers, all testified that on the date in question, plaintiff did not report any workplace injury. Furthermore, Brown specifically denied telling plaintiff to "shake it off" in response to a report of an injury.
6. Plaintiff testified that on the following day, October 3, 2002, his symptoms were still present, and that he thus determined on his own not to perform heavy work and instead used a tractor to move the steel plates. However, the notes of Dr. Del Curling, who later provided medical treatment to plaintiff, contradict plaintiff's testimony regarding plaintiff's use of a tractor. Plaintiff reported to Dr. Curling that on October 3, 2002, he continued to lift steel plates throughout the day with another worker, and that he experienced a progressive increase in back pain. In his discovery responses, plaintiff asserted that on October 3, 2002, he again informed his supervisor that he needed to see a physician. Contrary to plaintiff's assertions, Brown testified that plaintiff did not inform him of any physical problem on that date. Additionally, Wilson and Whithers testified that plaintiff worked the entire day and did not complain to them of back pain.
7. On October 4 and 5, 2002, plaintiff did not report to work. He testified that he telephoned work to report he would be absent on those days because of his symptoms. However, plaintiff did not telephone Brown, his immediate supervisor, or telephone Richard Rizzo, who supervises Brown; rather, plaintiff stated that he telephoned defendant-employer's Human Resource Manager, Bill Compton, and left a message on Compton's voicemail. Plaintiff testified at the hearing that he attempted to contact Rizzo, but that the only phone number he had available was for Compton. Contrary to plaintiff's assertions, during his deposition, Compton testified that he did not recall receiving any voicemail message from plaintiff regarding his absences. Plaintiff was not scheduled to work on October 6, 2002.
8. Prior to the date of the incident that gave rise to this claim, plaintiff was absent from work on approximately twelve days during the period of April 2002 until October 2, 2002. According to Brown, by the middle of September 2002, plaintiff's absences from work were becoming a hindrance for defendant-employer. Consequently, Brown and Rizzo approached plaintiff and informed him that if he missed any more time from work, he was going to lose his job. At the hearing, plaintiff admitted that such a meeting had occurred in September 2002. Following these events in September, when defendant-employer recorded as unexcused plaintiff's absences of October 4 and 5, 2002, Rizzo determined that plaintiff would be terminated. This decision was made on October 5, 2002, and both Rizzo and Brown testified that plaintiff's termination was in accordance with defendant-employer's attendance policy that applies to all employees, regardless of whether or not they have filed a workers' compensation claim. Plaintiff was officially terminated on October 11, 2002.
9. On Sunday, October 6, 2002, plaintiff telephoned Brown at his home and inquired as to whether he was going to be fired. Brown explained to plaintiff that it was Sunday evening, that he was at home with his family, and that he would discuss work issues with plaintiff the following morning at work. According to Brown's testimony, during this conversation, plaintiff made no mention of any type of back injury or other work-related claim.
10. On Monday, October 7, 2002, plaintiff arrived at worked at approximately 5:45 a.m., which was earlier than his normal arrival time. As Rizzo approached his office, plaintiff met him and stated that he could not be terminated because he had been absent from work the preceding Friday and Saturday as the result of a work-related injury. According to Rizzo's testimony, this was the first notice to defendant-employer of any claim by plaintiff of a work-related injury. Plaintiff also spoke with another superior, Gary Martin, and informed him, along with Rizzo, of the voice-mail messages that plaintiff left on Compton's voicemail regarding his absences.
11. Following plaintiff's report of a work-place injury, he was assigned to work as a flagman on October 7, 2002. While on the job site, plaintiff was met by Lonnie Sorrell and Wendy Hall, both from defendant-employer's Safety Department. Both Sorrell and Ms. Hall testified that during this meeting multiple inquiries were made as to whether plaintiff was in pain or needed to see a physician, but that plaintiff informed them that he was fine and did not require medical attention. Plaintiff testified that he denied being in pain or needing medical attention because he believed it would further jeopardize his job security.
12. Plaintiff contends that he was unable to work on October 4 and 5, 2002, because of extreme pain and symptoms. However, plaintiff sought no medical treatment on either of those days. Only after informing defendant-employer of his work-related injury claim on the date upon which, at minimum, his termination was going to be discussed, did plaintiff first seek medical attention at the emergency room where he complained of a low back strain and requested Vicodin.
13. On October 8, 2002, plaintiff informed defendant-employer's personnel that he had been to the emergency room the night before and was therefore required to report to U.S. Health Works. However, plaintiff was unable to attribute his symptoms to one single event when he reported to the examining physician. Following the examination, plaintiff was given Ibuprofen, and was cautioned about taking Vicodin.
14. While at work on October 10, 2002, plaintiff requested assistance in traveling to the pharmacy to refill his Vicodin prescription. According to Sorrell, while he was transporting plaintiff to the pharmacy, plaintiff informed him that defendant-employer would "pay" for doing this to him. After the pharmacy prescription was filled, and upon the instruction of Rizzo, Sorrell drove plaintiff home. At plaintiff's home, Sorrell testified that plaintiff exhibited extreme difficulty when exiting the vehicle, and winced in pain. Less than one hour later, Rizzo observed plaintiff walking towards downtown Greensboro with no apparent physical difficulties. According to Rizzo, the distance from plaintiff's home to downtown is greater than one mile. In his discovery responses, plaintiff attests that he was walking to downtown to locate and hire an attorney for this claim. However, at the hearing, plaintiff testified that the reason he walked into downtown Greensboro was to visit his sick mother.
15. Following plaintiff's termination, defendants continued to pay for his medical treatment with Health Works, subsequent physical therapy, and treatment by Dr. Del Curling. Defendants also provided transportation to several of the appointments and assigned a rehabilitation nurse to plaintiff's case. Dr. Curling first examined plaintiff on December 9, 2002, with plaintiff reporting back and left leg pain. Following his examination, Dr. Curling diagnosed plaintiff as having a muscle strain in the lumbar area. On January 29, 2003, Dr. Curling opined that plaintiff had reached maximum medical improvement, and assigned a five percent (5%) rating to his back, and permanent restrictions consisting of a forty pound (40 lb.) maximum occasional lifting with no prolonged sitting or standing. During his deposition, Dr. Curling testified that lifting heavy steel plates would be sufficient to cause a nerve contusion and back pain. Additionally, Dr. Curling testified that although plaintiff exhibited some symptom magnification during the initial visit, the symptom magnification was not present in subsequent visits and that he believed plaintiff to be credible.
16. At the hearing, testimony was elicited that established plaintiff was formerly known as Willie Lee Robinson. This testimony contradicted plaintiff's sworn interrogatory answers, and came forth only after plaintiff was confronted with a certified criminal record check verifying that he had in fact been formerly known as Willie Lee Robinson. Also in his answers to defendants' interrogatories, plaintiff denied ever being convicted of a criminal offense. However, as was evidenced at the hearing in this matter, plaintiff has been convicted of numerous crimes, both under the name of Willie Robbins and under the name of Willie Robinson.
17. Based on the timing and circumstances of the reporting of his injury, the Full Commission gives little weight to plaintiff's testimony regarding an alleged work-place injury. Additionally, given that the opinions of Dr. Curling are dependent upon the information reported to him by plaintiff, little weight is given to Dr. Curling's causation opinion. Plaintiff was not credible.
18. The competent evidence of record fails to show that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on or about October 2, 2002.
19. The Full Commission finds insufficient evidence to show that defendants failed to file timely the proper Forms documenting their denial of this claim, as the Deputy Commissioner so found.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The competent evidence of record fails to show that plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on or about October 2, 2002. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff's claim, therefore, is not compensable under the provisions of the North Carolina Workers' Compensation Act. Id.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Under the law, plaintiff's claim must be, and is hereby denied.
2. Each side shall pay its own costs.
This 5th day of May 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER